UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY BALL,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>FEDERAL INSURANCE COMPANY,<br><br>　　　　　　　Defendant. | 4:18-CV-04008-KES<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION TO<br>COMPEL |

Plaintiff, Randy Ball, brought a lawsuit against defendant, Federal Insurance Company (FIC), alleging bad faith on the part of FIC in adjusting a workers' compensation claim. Docket 1. The parties are now in the discovery stage of litigation. After a good faith effort to resolve a discovery dispute, Ball brought a motion to compel disclosure of two documents withheld by FIC. Docket 52. FIC claims the documents are privileged and irrelevant. Docket 55. The court has conducted an *in camera* review of the documents and now grants in part and denies in part Ball's motion to compel.

## BACKGROUND

The facts pertinent to this order are as follows:

Randy Ball was injured on June 21, 2013, while working as a swine technician at a hog confinement facility that was owned and operated by his employer in Willow Lake, South Dakota. Docket 33 at 1. FIC was the workers' compensation insurance carrier for Ball's employer. *Id.* Initially, FIC accepted Ball's claim as compensable. *Id.* For the next fourteen months, Ball received treatment from various medical providers. *Id.* at 2. In September 2014, FIC

denied additional benefits to Ball. *Id.* In October 2014, Ball filed a petition with the South Dakota Department of Labor and requested a hearing for additional benefits. *Id.* Ball, his employer, and FIC entered into a voluntary settlement agreement (Docket 34-14) that resolved Ball's worker's compensation claim in November 2017. Docket 33 at 2.

Ball initiated this lawsuit against FIC in January 2018, claiming that FIC acted in bad faith when it denied his claim in September 2014. Docket 1 ¶ 11. During discovery, Ball's attorney deposed Harold White, the FIC claim examiner who was initially assigned to Ball's claim. Docket 55 at 1-2. White referred to an in-house website used by FIC's adjustors to identify the workers' compensation laws of each state. Docket 54-1 at 85:6-18. At some point, Ball's claim was transferred within FIC from White to Rosa Cerna. *Id.* at 84:22-23. At her deposition, Cerna stated that she was familiar with in-house materials showing South Dakota workers' compensation laws. Docket 56-1 at 9:13-10:8. These materials were from "in-house counsel or counsel" and were used for "reference" and "training" purposes, according the Cerna. *Id.*

Ball requested production of the in-house state-by-state law digests that were identified by White in his deposition. Docket 54-2. FIC responded by identifying two specific documents it was withholding based on privilege and lack of relevance. Docket 54-3. Docket Ball seeks production of these two documents through his motion to compel. Docket 52 at 2. The first document, identified as document number CHUBB 6984-6992, is described as "Quick Facts: South Dakota" (Quick Facts). *Id.*; Docket 54-3 at 3. The second

2

document, identified as document number CHUBB 6993-6995, is described as "South Dakota Workers Compensation Checklist and Timeline" (Checklist and Timeline). Docket 52 at 2; Docket 54-3 at 3. In addition to the information provided in FIC's privilege log (Docket 54-3 at 3), both parties encouraged the court's *in camera* review of the documents. Docket 53 at 2; Docket 55 at 3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26, which governs the scope of discovery in civil matters, provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *nonprivileged* matter that is *relevant* to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Essentially, information must be both nonprivileged and relevant in order to be discoverable. *Id.* If a party does not produce requested documents, the party seeking discovery requests may move for an order compelling production. *See* Fed. R. Civ. P. 37(a)(3)(B).

The scope of discovery under Rule 26(b) is extremely broad. *See* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2007, 36-37 (3d ed. 1970). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever

facts he has in his possession." *Id.* at 39 (quoting *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947)). The federal rules distinguish between discoverability and admissibility of evidence. Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2). The rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. *Id.* But these considerations are not inherent barriers to discovery. *Id.*

## DISCUSSION

### I.    **Whether the Material Sought is Relevant**

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y,* Civ. No. 03-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). The party seeking discovery must make a threshold showing of relevancy before the court orders the resisting party to produce the information. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund, Inc.*, 437 U.S. at 352). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *E.E.O.C.*, 2007 WL 1217919, at *1 (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)).

A two-part test establishes a bad faith denial of workers' compensation benefits under South Dakota law: "(1) [t]here was an absence of a reasonable basis for denial of policy benefits; and (2) [t]he insurer knew or recklessly disregarded the lack of a reasonable basis for denial." *Johnson v. United Parcel Serv., Inc.*, 946 N.W.2d 1, 9 (S.D. 2020) (citing *Hein v. Acuity*, 731 N.W.2d 231, 235 (S.D. 2007)). A claim that is "fairly debatable either in fact or law" does not establish bad faith. *Id.* at 10 (quoting *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623, 630 (S.D. 2009)). "The focus is on the existence of a debatable issue, not on which party was correct." *Id.* (citation omitted). Whether an insurer acted in bad faith "is determined based upon the facts and law available to [the] [i]nsurer at the time it made the decision to deny coverage." *Acuity*, 771 N.W.2d at 629 (S.D. 2009) (quoting *Walz v. Fireman's Fund Ins. Co.*, 556 N.W.2d 68, 70 (S.D. 1996)).

Here, Ball has met his burden of establishing the relevance of the documents. Both documents were known to White and Cerna when they processed Ball's claim. The documents' contents strike at the heart of the law and facts known to the insurer at the time FIC denied coverage, because the documents reveal internal processes, procedures, and statements of law. While Cerna's testimony raises doubt that the documents in question were actually referenced when adjusting Ball's claim, the documents were nonetheless part of the adjusters' training program. In any case, the documents' contents bear on, and reasonably could lead to other matter that could bear on, two key issues: whether there was a debatable issue of law or fact when FIC denied

5

Ball's claim, and whether there was an absence of a reasonable basis to deny benefits.

Ball's articulation of the documents' relevance (Docket 53 at 8-9) is countered only by FIC's argument that the documents may not have been specifically relied upon when adjusting Ball's claim. Docket 55 at 7. But the rules of discovery set a broader standard. Under these rules and the facts presented here, Ball has established that the documents are relevant to his bad faith claim against FIC.

## II.     Whether the Material Sought is Privileged

In diversity actions, a federal court must apply state law to determine the existence and scope of attorney-client privilege. Fed. R. Evid. 501; *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). Because this is a diversity case and South Dakota law is the governing substantive law, South Dakota law supplies the law on privilege.

The attorney-client privilege protects from disclosure "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client[.]" SDCL § 19-19-502(b). There are four minimum elements necessary to invoke the attorney-client privilege: "(1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services; and (4) the communication was made in one of the five relationships enumerated in SDCL 19-[19-502(b)]." *Voorhees Cattle Co., LLP v. Dakota Feeding Co., LLC*, 868 N.W.2d 399, 405 (S.D. 2015) (alteration in original) (quoting *State v.*

6

*Rickabaugh*, 361 N.W.2d 623, 624-25 (S.D. 1985)). The party claiming a privilege has the burden of establishing that the privilege exists. *Acuity*, 771 N.W.2d at 637 (citing *State v. Catch the Bear*, 352 N.W.2d 640, 645 (S.D. 1984)). The South Dakota Supreme Court has held that "privileges created by statute are to be strictly construed to avoid suppressing otherwise competent evidence." *Acuity*, 771 N.W.2d at 639 (quoting *Catch the Bear*, 352 N.W.2d at 646-47).

Under South Dakota law, an "entity" is considered a client. SDCL § 19-19-502(a)(1). A client may claim the attorney-client privilege when confidential communications concerning the rendition of professional legal services to the client occur between the client *or its representative* and the client's lawyer. SDCL § 19-19-502(b)(1) (emphasis added). A representative of the client "is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client[.]" SDCL § 19-19-502(a)(2). "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." SDCL § 19-19-502(a)(5). Put another way, "the [attorney-client] privilege exists to protect . . . the giving of professional advice to those who can act on it . . . ." *Upjohn Co. v. U.S.*, 449 U.S. 383, 390 (1981). This means that the privilege includes "communications among corporate employees that reflect advice rendered by counsel to the

7

corporation." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).

"The facts concerning the existence of a lawyer-client relationship are not privileged evidence." *Catch the Bear*, 352 N.W.2d at 645 (citation omitted). South Dakota common law and the Federal Rules of Civil Procedure require a party to produce a privilege log if the party believes that documents sought during discovery are protected by the attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(5)(a) ("When a party withholds information . . . claiming that the information is privileged . . . the party must . . . describe the nature of the documents, communications, or tangible things produced or disclosed . . . ."); *Acuity*, 771 N.W.2d at 637 (reasoning that a party claiming that the attorney-client privileged protects against disclosure should submit a privilege log to the party requesting the information).

### A.    Whether the Checklist and Timeline is Privileged

Here, the privilege log and this court's *in camera* review of the document fail to establish that FIC was a client and that the communication was confidential. The disclaimer on the last page indicates that the document, distributed at a "seminar," should "not . . . be taken as legal advice as to any particular situation." CHUBB 6995. Failure to show both a lawyer-client relationship and the existence of a confidential communication is fatal to claiming attorney-client privilege. *Voorhees Cattle Co., LLP*, 868 N.W.2d at 405. Thus, FIC has not met its burden of proving that the Checklist and Timeline is privileged.

8

**B.    Whether Quick Facts is Privileged**

After an *in camera* review, the court finds that the Quick Facts internal website (made available to the court in printed form) is a communication from an attorney to FIC, a corporate entity, containing legal advice made available to FIC employees. The *in camera* review corroborates the grounds for the privilege identified by FIC's counsel in its communications with Ball's counsel (Docket 54-5) and in its privilege log (Docket 54-3). The communication was clearly intended to be kept confidential based on its availability only to FIC employees. Mr. White's deposition testimony merely revealed the existence of the website, not its contents. *See Catch the Bear*, 352 N.W.2d at 645. FIC has met its burden of establishing the existence of attorney-client privilege as to Quick Facts. Thus, Quick Facts is not discoverable.

## CONCLUSION

The Checklist and Timeline is discoverable because it is relevant and not privileged. Quick Facts is not discoverable because it is privileged. Thus, it is

ORDERED that Plaintiff's motion to compel (Docket 52) is granted in part and denied in part.

Dated September 4, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE